FILED

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 12-6222     DIVISION "F"     DOCKET NO. 7

SHIRLEY BOTTLEY, JOVANE BENOIT AND JUAJUAN BENOIT

VERSUS

EXXON MOBIL CORPORATION, EXXON MOBIL OIL CORPORATION, HUMBLE OIL & REFINING COMPANY, HUMBLE OIL & REFINING CORPORATION, CHEVRON USA, INC., BP CORPORATION NORTH AMERICA, INC., THE TEXAS COMPANY, DEVON ENERGY PRODUCTION COMPANY, LP., DYNAMIC EXPLORATION, INC., CONOCOPHILLIPS COMPANY, SHELL OIL COMPANY, MARATHON OIL COMPANY, PLACID OIL COMPANY, OXY INC., VARCO L.P., AND INTRACOASTAL TUBULAR SERVICES, INC.

FILED:_____

_____
DEPUTY CLERK

## PETITION FOR WRONGFUL DEATH AND SURVIVAL DAMAGES

NOW come plaintiffs, Shirley Bottley, Jovane Benoit, and Juajuan Benoit, who respectfully represent as follows:

1. Made plaintiffs herein are:

    i. Plaintiff, Shirley Bottley, who is of the lawful age of majority and is a domiciliary of the Parish of Orleans, State of Louisiana, is the surviving spouse of decedent, Cornelius Bottley, and is therefore statutorily authorized to bring this action pursuant to La. C.C. Arts. 2315.1 and 2315.2.

    ii. Plaintiff, Jovane Benoit, who is of the lawful age of majority and is a domiciliary of the County of Ellis and a citizen of the State of Texas, is the biological son of decedent, Cornelius Bottley, and is therefore statutorily authorized to bring this action pursuant to La. C.C. Arts. 2315.1 and 2315.2.

    iii. Plaintiff, Jujuan Benoit, who is of the lawful age of majority and is a domiciliary of the County of Harris and a citizen of the State of Texas, is the biological son of decedent, Cornelius Bottley, and is therefore statutorily authorized to bring this action pursuant to La. C.C. Arts. 2315.1 and 2315.2.


EXHIBIT C

2. Defendants – There are two classes of defendants herein – Oil Company Defendants, and Pipe Cleaning Contractor Defendants.

<u>Oil Company Defendants</u>

    a.    Exxon Mobil Corporation, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

    b.    ExxonMobil Oil Corporation, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is Corporation Service Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

    c.    Humble Oil & Refining Company, a foreign corporation, whose mailing address is 1216 Main St., Houston, TX 77002.

    d.    Humble Oil & Refining Corporation, a foreign corporation, whose agent for service of process is Humble Oil & Refining Corporation, P.O. Box 2180, Ste. 4201, Houston, TX 77252.

    e.    Shell Oil Company, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 5615 Corporate Blvd. Ste. 400 B, Baton Rouge, LA 70808.

    f.    BP Products North America, Inc., individually and as successor in interest to Amoco Oil Company and the American Oil Company, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is Prentice-Hall Corporation System, Inc., 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

    g.    Chevron USA, Inc., individually and as the parent company and successor to Gulf Oil Corporation, Gulf Oil Exploration & Production Company and Texaco, Inc., the successor to the Texas Company, and that Chevron USA, Inc. is a foreign corporation authorized to do and doing business in the State of Louisiana,

whose agent for service of process is Prentice-Hall Corporation System, Inc., 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

h. ConocoPhillips Company, individually and as successor in interest to Phillips Petroleum Company and Conoco, Inc., a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is United States Corporation Company, 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

i. Marathon Oil Company, individually and as successor in interest to USS Holdings Company, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 5615 Corporate Blvd. Ste. 400 B, Baton Rouge, LA 70808.

j. The Texas Company, individually and as successor in interest to Texaco, Inc. and the Texas Corporation, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is Prentice-Hall Corporation System, Inc., 320 Somerulos Street, Baton Rouge, Louisiana 70802-6129.

k. BP America Production Company, individually and as successor in interest to Amoco Production Company, Pan American Petroleum Corporation, Standolind Oil and Gas Company and Vastar Resources, Inc., a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 5615 Corporate Blvd. Ste. 400 B, Baton Rouge, LA 70808.

l. Devon Energy Production Company, L.P., a foreign partnership licensed to do and doing business in the State of Louisiana, individually and as successor in interest to Devon Energy Corporation, Pennzenergy Exploration and Production, L.L.C.,

        Devon Energy Operating Company, Devon Energy Gas Marketing Company, Pennzoil Gas Marketing Company, Pennzoil Producing Company, Union Producing Company, Pennzoil Oil & Gas, Inc., Pennzoil Company, Pennzoil Producing Company, Pennzoil United, Inc., United Gas Corporation, Pennzoil Petroleum Company.

  m.  Placid Oil Company, a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 5615 Corporate Blvd. Ste. 400 B, Baton Rouge, LA 70808.

  n.  Oxy Inc., a foreign corporation authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 5615 Corporate Blvd. Ste. 400 B, Baton Rouge, LA 70808.

<u>The Pipe Cleaning Contractor Defendants</u>

  o.  Intracoastal Tubular Services, Inc., individually and as the successor corporation of Intracoastal Truck Line, Inc., Intracoastal Terminal, Inc., and Intracoastal Pipe Repair & Supply, Inc., and whose registered agent is Thomas E. Balhoff, Esq., Roedel Parsons Koch, *et al.*, 8440 Jefferson Highway, Ste. 301, Baton Rouge, LA 70809.

  p.  Varco LP as the successor to Tuboscope International, Inc., a foreign corporation not authorized to conduct business in this state.

3. Venue is proper pursuant to La. C.C. art. 74 in Orleans Parish because Cornelius Bottley died in Orleans Parish and because a substantial amount of the damages were sustained in Orleans Parish.

**Factual Background**

4. Pursuant to Uniform District Court Rule 9.4, plaintiffs declare that decedent, Cornelius Bottley, in 2002 filed a law suit against various defendants, for his own personal injuries and damages arising out of the same tortious conduct giving rise to the instant plaintiffs' wrongful death and survival causes of action, in the matter styled *Warren Lester, et al. v.*

*Exxon Mobil, et al.*, Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2002-19657, Section 8, Division N, the Honorable Ethel S. Julien presiding.

5. The *Warren Lester v. Exxon Mobil* case is still pending before Judge Julien, as is the personal injury claim filed by Cornelius Bottley in particular.

6. During the year 1978 decedent was employed by Magnaflux Corporation ("Magnaflux").

7. During the years 1979 through 1991 was employed by Louisiana Texas Oilfield Inspection Service ("LTI").

8. During the years 1981 and 1982 decedent was employed by ITAC, Inc. ("ITAC").

9. During the year 1990 decedent was employed by B&R Construction.

10. While employed by Magnaflux, LTI, ITAC and B&R Construction decedent participated in the inspection and cleaning of used oilfield tubing at various yards identified in Paragraph 24 below.

11. Decedent's job duties required him to work in a close proximity to cleaning operations of used pipe that contained radioactive scale which, when cleaned through the pipe cleaning process of pipe cleaning facilities, created hazardous dust in the air which plaintiff breathed in and which ultimately caused the disease pathology which killed him.

12. During the above referenced time, decedent was exposed to dangerous levels of radiation as set forth in greater detail below, which ultimately caused him to develop esophageal cancer that ultimately killed him.

13. On July 17, 2012 decedent, Cornelius Bottley, died as a result of esophageal cancer which was directly caused by the unsafe radiation exposures alleged herein.

14. At all pertinent times, the Oil Company Defendants herein, as part of their oil and gas production operations, had used production equipment, including oil field pipe also called tubulars, casing, and other equipment (hereinafter collectively referred to as "used production equipment") cleaned at locations where the Pipe Cleaning Contractor Defendants conducted pipe cleaning operations for the Oil Company Defendants.

15. Said used production equipment contained hazardous, toxic and carcinogenic radioactive materials which is referred herein by plaintiffs as OGR ("oilfield generated radioactivity") and has been referred to as "NORM" by the oil industry referring to "naturally occurring radioactive material", that is referred herein as OGR.

16. OGR is co-produced during oil and gas production at which time it adheres to oil production

equipment and, in particular, tubing and casing.

17. Used production tubing and used production casing are referred to herein collectively as "pipe".

18. The pipe that the Oil Company Defendants used in their oil and gas production operations became contaminated with OGR scale.

19. As related to the claims alleged herein, the OGR scale bearing pipe of the Oil Company Defendants was transported to the following pipe yards:
    a. The ITCO facility in Harvey, Louisiana; Morgan City, Louisiana; Patterson, Louisiana; Amelia, Louisiana; and Houston, Texas.
    b. Mustang facility in Oklahoma; Houston, Texas; Houma, Louisiana; and Harvey, Louisiana.
    c. French Jordan facility in Houma, Louisiana.
    d. Vetco-Gray facility in Houston, Texas; Lafayette, Louisiana; and Morgan City, Louisiana.
    e. Exxon facility in Harvey, Louisiana.
    f. Shell facility in Thomasville, Mississippi and Laurel, Mississippi.
    g. International Tools facility in Harvey, Louisiana.
    h. Oilfield Testers facility in Harvey, Louisiana.
    i. Tubekote facility in Harvey, Louisiana.
    j. Tuboscope facility in Harvey, Louisiana.
    k. Packard Yard in Houston, Texas and Amelia, Louisiana.
    l. OFS facility in Harvey, Louisiana; Houston, Texas; Midland, Texas; and Odessa, Texas.
    m. Magna Flux Yards/Peabody Industries facilities in Houston, Texas.
    n. Brown & Root facilities in Harvey, Louisiana.

20. From 1978 through 1991, decedent regularly worked at these pipe yards in the course and scope of his work for Magnaflux, LTI, ITAC and B&R Construction conducting services to inspect, clean, blast, prime and coat used oil field pipe.

21. At these pipe yards, the OGR scale was cleaned from the pipes by the Pipe Cleaning Contractor Defendants and other persons.

22. At no time after removal from the well nor while transported to the pipe yards and during

cleaning operations was the scale or the used production equipment which was contaminated with scale ever marked or otherwise identified as radioactive.

23. At all relevant times, the Oil Company Defendants' direct employees were present at the pipe yards observing the cleaning and inspection of the used production equipment.

24. At all relevant times, the Oil Company Defendants had actual knowledge of the presence and dangerous levels of radiation in the OGR scale.

25. The cleaning process utilized by the Pipe Cleaning Contractor Defendants caused the OGR scale to become pulverized and which resulted in various particulate sizes, a substantial amount of which became airborne and remained airborne and spread throughout the pipe yard and more particularly, around the work locations in the pipe yards where decedent worked.

26. At all relevant times, employees of Pipe Cleaning Contractor Defendants were present at one or more of these facilities and were engaged in the cleaning of used pipe which caused the exposure of decedent to unsafe levels of radiation

27. The injurious dose suffered by decedent resulted from radiation emanating from the scale which accumulated upon the ground and in the air, and from the inhalation and ingestion of the aerosolized dust.

### Defendants' Liability

28. The Oil Company Defendants are liable for the following reasons:

   a. At all relevant times, they knew of the danger presented by OGR but failed to warn decedent.

   b. At all relevant times, they knew or should have known that the Pipe Cleaning Contractor Defendants were performing work under contracts with the Oil Company Defendants such that this work would cause decedent to suffer significant exposures to OGR.

   c. At all relevant times, they failed to properly supervise the operations of the Pipe Cleaning Contractor Defendants and failed to inform decedent that the scale that was cleaned also contained OGR.

   d. The Oil Company Defendants failed to properly warn, advise or otherwise inform the Pipe Cleaning Contractor Defendants regarding OGR in violation of their contract

with the Pipe Cleaning Contractor Defendants.

e. They failed to test and/or properly test their pipe for OGR.

f. They failed to dispose properly dispose of the OGR waste or otherwise remove it so it did not present a hazard.

g. They failed to place marking identification on the OGR contaminated pipe.

h. They failed to place marking identification on the OGR contaminated pipe before transport.

i. They failed to properly mark and prevent access to OGR contaminated work areas.

j. They acted in a careless and negligent manner without due regard for the safety of the decedent.

k. They are strictly liable for all damages caused by said OGR, having *garde* of the contaminated pipe and although the pipe may have been temporarily in the control of the pipe cleaning yards, the pipe at all times remained under the custody, control, direction, supervision of the Oil Company Defendants and Oil Company Defendants controlled what cleaning processes were to be administered to Oil Company Defendants' pipes and controlled its movement and storage.

l. They are absolutely liable for all damages caused by said OGR, having engaged in an ultra-hazardous activity in that when Oil Company Defendants knew that the used pipe cleaned at the pipeyards contained radioactivity and failed to warn plaintiff's employers, there was no way the pipe cleanings operations could be conducted without causing harm to all persons in the pipepyard, including but not limited to, the decedent herein.

m. The Oil Company Defendants owed a duty to decedent to conduct operations in a way that did not cause any harm or injury to him and these defendants breached that duty.

n. These acts and/or omissions of the Oil Company Defendants were a substantial contributing cause of the esophageal cancer from which decedent suffered and which ultimately caused his death, and plaintiffs' damages.

29. The Pipe-cleaning Contractor Defendants are liable unto petitioners for the following reasons:

a. They failed to conduct safe pipe-cleaning operations at the identified pipe yards so as to prevent decedent's exposure to OGR.

    b. They failed to properly contain or dispose of OGR so as to prevent decedent's exposure to OGR.

    c. They failed to clean up the contamination caused by the pipe-cleaning operations on these properties.

    d. They failed to properly test the pipe or to otherwise monitor for radiation discharge or emissions from their pipe-cleaning operations.

    e. They failed to warn decedent of the dangers from the radioactive materials being discharged and emitted from the pipe-cleaning operations.

    f. They are strictly liable for all damages caused by said OGR, having exercised temporal *garde* over the contaminated pipe.

    g. They are absolutely liable for all damages caused by said OGR, having engaged in an ultra-hazardous activity that involved the cleaning of radioactive waste and a non-disclosure of the presence of said radiation to plaintiff's employer and plaintiff. Due to the concealment of radiation's presence by defendants, there was no way the cleaning could have been done in a safe manner as to prevent adverse health consequences to decedent.

    h. The Pipe Cleaning Contractor Defendants owed a duty to decedent to conduct operations at these pipe yards in a way that did not cause any harm or injury to decedent and the pipe-cleaning contractors breached this duty.

    i. These acts and/or omissions of the Oil Company Defendants were a substantial contributing cause of the lung cancer, coronary artery disease, and hypertension from which decedent suffered and which ultimately caused his death, and plaintiffs' damages.

30. Under no legal theory, nor under the extant facts, can either of the plaintiffs or decedent be found comparatively negligent.

31. Under no legal theory, nor under the extant facts, can any contributory negligence be assigned to plaintiffs or decedent.

32. Defendants named herein are jointly, severally and/or solidarily liable unto plaintiffs as a result of their respective tortious conduct.

### Plaintiffs' Damages

33. As a result of decedent's work in and around pipe cleaning facilities where various services to clean, blast, prime and coat used oil field pipe were conducted, he sustained and ultimately died from esophageal carcinoma.

34. Plaintiffs are entitled to survival damages, pursuant to La. C.C. Art. 2315.1, including, but not limited to the decedent's pre-death pain and suffering and mental anguish, medical expenses and past lost wages.

35. Plaintiffs are entitled to wrongful death damages, pursuant to La. C.C. Art. 2315.2, including, but not limited to the loss of each decedent's love, affection, companionship, support, wages and funeral expenses.

36. Plaintiffs are entitled to exemplary damages from defendants, jointly and severally, because of the defendants' reckless and wanton disregard for public safety in the storage, handling, transportation and/or disposal of hazardous and/or toxic materials which conduct occurred during the period of the effective time period of Civil Code Article 2315.3.

### *Contra Non Valentem*

37. All defendants herein engaged in a pattern of conduct which resulted in concealment of the occurrence of OGR in oil and gas production equipment. Further, the Oil Company Defendants individually and jointly engaged in a designed pattern of concealment to prevent decedent and plaintiffs from knowing and availing themselves of the causes of action alleged herein. Therefore, the running of prescription has been suspended by operation of the doctrine of *contra non valentem*.

38. Plaintiffs were prevented from acquiring knowledge of their claims asserted herein due to the concealment of information by the Oil Company Defendants set forth in greater detail in below:

    a. The oil industry and the Oil Company Defendants in particular, have known about the presence of OGR in used oilfield equipment since the early twentieth century.

    b. The buildup of highly radioactive material, including pipe scale, was found in Russian oil fields in 1917.

    c. By 1953, the Oil Company Defendants were aware that high levels of radioactive material present in their North American petroleum production operations when

testing was done by United States Geologic Survey geologists searching for radioactive material for military applications found highly radioactive pipe scale on production pipes and equipment in Kansas oil fields.

d. By the early 1960's at the latest, the Oil Company Defendants were aware that dangerous levels of OGR material were present in their European production streams because of high levels of radiation they had discovered at their gas processing plants.

e. By the early 1970's at the latest, the Oil Company Defendants were aware that dangerous levels of radioactive OGR material were present in their North American production streams because of high levels of radiation they had discovered at their gas processing plants.

f. By the early 1970's, it was found that levels of radioactive material dangerous to humans were present in their Louisiana petroleum production operations when testing revealed high levels of radiation in production equipment in oil fields at White Castle, Louisiana.

g. By 1981, the Oil Company Defendants were aware that extremely high levels of radioactive material were present in their offshore production streams when high levels of radiation were found on the Piper Alpha platform in the North Sea.

   i. Defendant Exxon Mobil Corporation in particular was aware of this finding because it was a joint venture in the Piper Alpha platform.

h. In May 1985 the Oil Company Defendants were again informed of the presence and danger of OGR scale in their production streams when A.L. Smith presented his paper <u>Radioactive Scale Formation</u> at the Offshore Technology Conference in Houston, Texas, in which conference the Oil Company Defendants were participants and/or attendants.

i. In 1986, defendants Chevron USA, Inc. and Chevron USA Holdings, Inc. received additional notification of the presence of dangerous levels of radiation in their production stream when a whistleblower alerted authorities to the presence of high levels of radiation in production equipment in Mississippi.

j. Information about the presence of dangerous levels of radiation in Mississippi was immediately disseminated to oil companies including the Oil Company Defendants herein.

k. Though all Oil Company Defendants were immediately aware of this finding they did nothing to warn workers such as decedent or his family, petitioners.

l. In 1986 and 1987, the Oil Company Defendants, working through oil industry trade groups including the Mid-Continent Oil & Gas Association and the American Petroleum Institute formed task forces to spread information falsely downplaying the dangers of OGR and to influence government regulators against creating costly NORM regulations.

m. In 1988, the American Petroleum Institute's NORM committee, acting through representatives of the Oil Company Defendants, began a program to measure radiation levels in petroleum production facilities across the United States for the alleged purpose of determining the average radioactivity level of oil field equipment in the United States.

n. In actuality, the data collected in this program was manipulated by an agent of the defendants herein for the purpose of yielding falsely low levels of radioactivity in oil field equipment.

  ii. This same agent subsequently submitted this manipulated data to the United States Environmental Protection Agency for use in an agency publication allegedly setting forth information on the average level of specific radioactivity in pipe scale produced in United States oil and gas production operations.

o. These false low results were then utilized by the Oil Company Defendants to prevent the imposition of costly environmental regulations and to prevent persons such as decedent from becoming aware of their exposures.

p. Because of the aforementioned conduct of the Oil Company Defendants, the presence of OGR and the dangerously high radioactivity levels in OGR were prevented from being found out by government regulators, the public and exposed individuals such as decedent.

q. In 2002, Exxon Mobil Corporation, through its attorneys, retained a health physicist to conduct an alleged experiment, the Adams and Reese study, on the potential hazards of OGR contaminated pipe scale which experiment was not properly done in conformity with standard scientific methodology and which erroneously concealed

and downplayed the dangers of OGR contaminated pipe scale.

r. This experiment was subsequently published in a radiation health and safety publication as a scientific study without disclosure of the author's conflict of interest that he was working for the attorneys for Exxon Mobil Corporation, again resulting in the regulators, the public and exposed individuals such as plaintiff being prevented from knowing of the actual and true dangers associated with exposure to OGR contaminated pipe scale.

s. The result of the ongoing pattern of concealment and dissemination of false information by the defendants was to prevent plaintiffs from becoming aware of their cause of action until less than one year before this lawsuit was filed.

39. Plaintiffs asserts no claims arising under the laws of the United States, nor do they assert any cause of action that are created by federal legislation, the United States Constitution or any treaties of the United States.

WHEREFORE, plaintiff prays that all defendants be duly cited and served with this Amending and Superseding Petition, and that after all legal delays and due proceedings are had, that there be judgment rendered herein in favor of plaintiff against all defendants, jointly, severally and/or in *solido* for an amount of compensatory damages found reasonable in the premises; that there be judgment herein in plaintiffs' favor against all defendants, jointly, severally and/or in *solido*, for exemplary damages in an amount sufficient to punish, prevent or deter defendants and other persons and entities similarly situated from undertaking the same sort of injurious conduct in the future; for all costs of these proceedings, together with legal interest on the entire judgment from date of original judicial demand until paid; for all other orders necessary in the premises and for all other general and equitable relief to which plaintiff is entitled and this Honorable Court may deem necessary and fit.

RESPECTFULLY SUBMITTED:

TIMOTHY J. FALCON – Bar No. 16909
JEREMIAH A. SPRAGUE – Bar No. 24885
JARRETT S. FALCON – Bar No. 34539
FALCON LAW FIRM
5044 Lapalco Boulevard
Marrero, Louisiana 70072
Telephone: 504-341-1234
Facsimile: 504-341-8115

and

FRANK M. BUCK, JR. – Bar No. 16836
757 St. Charles Avenue, Suite 201
New Orleans, Louisiana 70130
Telephone: (504) 522-2825
Facsimile: (504) 522-2887

*Attorneys for Plaintiffs*

**PLEASE SERVE:**

**Exxon Mobil Corporation**
Through its agent for service of process:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-612

**ExxonMobil Oil Corporation**
Through its agent for service of process:
Corporation Service Company
320 Somerulos Street
Baton Rouge, LA 70802-612

**Humble Oil & Refining Company**
Through long-arm service at:
1216 Main St.
Houston, TX 77002

**Humble Oil & Refining Corporation**
Through its agent for service of process:
Humble Oil & Refining Corporation
P.O. Box 2180, Ste. 4201
Houston, TX 77252

**Chevron USA, Inc.**
through its agent for service of process:
Prentice-Hall Corporation System, Inc.
320 Somerulos Street
Baton Rouge, LA 70802-6129

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

**BP Corporation North America, Inc.**
Through its registered agent:
THE PRENTICE-HALL CORPORATION SYSTEM, INC
320 SOMERULOS STREET
BATON ROUGE, LA 70802-6129

**BP America Production Company**
Through its agent for service of process:
C T Corporation System
5615 Corporate Blvd., Ste. 400 B
Baton Rouge, LA 70808

**Texaco, Inc.**
Through its registered agent:
THE PRENTICE-HALL CORPORATION SYSTEM, INC
320 SOMERULOS STREET
BATON ROUGE, LA 70802-6129

**Intracoastal Tubular Services, Inc.**
Through its agent for service of process:
Thomas E. Balhoff, Esq.
Roedel Parsons Koch
8440 Jefferson Highway, Ste. 301
Baton Rouge, LA 70809

**ConocoPhillips Company**
Through its agent for service of process:
United States Corporation Company
320 Somerulos Street
Baton Rouge, LA 70802-6129

**Shell Oil Company**
Through its agent for service of process:
C T Corporation System
5615 Corporate Blvd. Ste. 400 B
Baton Rouge, LA 70808

**Marathon Oil Company**
Through its agent for service of process:
C T Corporation System
5615 Corporate Blvd. Ste. 400 B
Baton Rouge, LA 70808

**Devon Energy Production Company, L.P.**
Through its agent for service of process:
C T Corporation System
5615 Corporate Blvd. Ste. 400 B
Baton Rouge, LA 70808

**Placid Oil Company**
C T CORPORATION SYSTEM
5615 CORPORATE BLVD., STE. 400B
BATON ROUGE, LA 70808

**Oxy Inc.**
C T CORPORATION SYSTEM
5615 CORPORATE BLVD., STE. 400B
BATON ROUGE, LA 70808

Varco LP
Through long-arm service of process:
7909 Parkwood Circle Dr.
Houston, TX 77036