# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WARREN LESTER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-1824** |
| **EXXON MOBIL CORP., ET AL.** | **SECTION "L" (2)** |

## ORDER & REASONS

Before the Court is a motion for summary judgment filed by Defendants Shell Oil Company, Shell Offshore Inc., and SWEPI LP (collectively, "Shell"). R. Doc. 547. The motion is opposed. R. Doc. 554. Shell has filed a reply, R. Doc. 559, to which Plaintiffs have filed a surreply, R. Doc. 561. The Court heard oral argument on the motion on February 20, 2019. R. Doc. 563. Having considered the parties' arguments, briefing, and the applicable law, the Court is ready to rule.

## I.    BACKGROUND

Plaintiffs in this action were allegedly exposed to naturally occurring radioactive material ("NORM") associated with the cleaning of used oilfield pipe at pipe yards in Harvey, Louisiana, including the "Grefer Tract," nearby tracts of land, and tracts of land in other locations in Louisiana, Texas, Mississippi, and Oklahoma. These Plaintiffs are individuals residing in several states who either worked at, or lived near, these facilities. The *Lester* Plaintiffs, a number of whom allege to have contracted cancer from NORM, seek damages for personal injury, medical monitoring, property damage, and punitive damages.

*Lester* has a lengthy procedural history. In 2002, over 600 Plaintiffs filed a single petition, entitled the *Lester* petition, seeking damages in Civil District Court for the Parish of Orleans, State of Louisiana. Since 2002, the state court proceedings have disposed of the claims

of various Plaintiffs through "trial flights," settlements, or other dismissals, such that just over 500 Plaintiffs remain. The state court has systemically grouped up to twelve Plaintiffs' like-claims together for trial flights. According to Plaintiffs, none of the completed trial flights have had preclusive effect on subsequent trial flights.

One of the Plaintiffs included in the *Lester* petition was Cornelius Bottley, who died from esophageal cancer in 2012. On July 16, 2014, three members of his surviving family filed a separate *Bottley* action, also in Civil District Court in Orleans Parish. With an upcoming trial flight, these *Bottley* Plaintiffs on July 31, 2014 moved the state court to transfer and consolidate their case with the *Lester* state action. Based on this motion for consolidation, *Bottley* Defendant Exxon Mobil Oil removed both *Lester* and *Bottley* to this Court under the Class Action Fairness Act ("CAFA"). Plaintiffs moved to remand the cases to state court. This Court, however, denied remand on October 23, 2014, and consolidated *Lester* and *Bottley*. The Court explained that Plaintiffs' motion to consolidate in state court constituted a "proposal for joint trial," particularly where over 500 plaintiffs remained at the time the motion to consolidate was filed. Thus, CAFA bestowed federal "mass action" jurisdiction.

In October 2014, the Court denied Plaintiffs' motion to remand. R. Docs. 45, 46. Plaintiffs appealed this decision, which the Fifth Circuit upheld in June 2018. R. Doc. 383. Following remand, the Court set the "Tuboscope" Flight for trial on October 11, 2018. R. Doc. 413. The Tuboscope Flight Plaintiffs bring claims against Shell, alleging Shell caused them to be exposed to NORM while employed at the Tuboscope pipe yard in Harvey, Louisiana from approximately 1962 to 1998. According to Plaintiffs, the Shell Defendants would send used pipe to the Tuboscope yard for cleaning, inspection, and coating. Plaintiffs allege the pipes Shell sent to the yard contained scale contaminated with NORM, thereby exposing Plaintiffs to unsafe levels of

radiation. Of the eight Tuboscope Plaintiffs, four have been diagnosed with cancer and three have died from it. The remaining four plaintiffs bring claims for fear of cancer and increased risk of cancer. Pursuant to the Court's case management order, discovery in the Tuboscope Flight closes March 22, 2019, with Plaintiffs' expert reports due by no later than January 8, 2019. *Id.* at 1.

## II. PRESENT MOTION

On January 31, 2019, Shell moved for summary judgment, arguing Plaintiffs had no expert testimony connecting Shell's conduct to Plaintiffs' exposure to NORM dust "in doses sufficient to cause an injury," and thus contend Plaintiffs cannot establish an essential element of their claim. R. Doc. 547-1 at 1. In support of this argument, Shell submits, because it was only one of eighty other Tuboscope yard customers, and Plaintiffs' expert reports calculate only the total dose each Plaintiff received during their entire tenure working on equipment belonging to some or all of Tuboscope's customers, Shell contends Plaintiffs have no evidence upon which a reasonable jury may find a legally significant radiation dose is attributable to Shell's acts or omissions.

In opposition, Plaintiffs point to witness testimony suggesting the single largest source of Plaintiffs' exposure to NORM dust was from Shell's used pipe. R. Doc. 554 at 2. Plaintiffs also argue Shell has offered no evidence to support its claim of third-party fault, for which Plaintiffs contend Shell bears the burden of proof. Finally, Plaintiffs submit Shell is solidarity liable with any alleged third-party tortfeasors and therefore bears fifty to one hundred percent of the responsibility for Plaintiffs' injuries depending on the individual Plaintiffs' date of "significant exposure" as determined by the finder of fact.

In reply, Shell contends that, regardless of whether it is solidarily liable with any third parties, Plaintiffs have nevertheless failed to show their injuries were the result of Shell's actions

3

or inactions. Shell argues: (1) it is entitled to summary judgment, as "Plaintiffs' opposition ignores the issue before this Court"; (2) for a defendant to be solidarily liable, it must first be found liable; (3) whether Shell can show third-party fault is irrelevant; and (4) the evidence Plaintiffs offer in an attempt to defeat Shell's summary judgment motion is misleading. R. Doc. 558.

## III. LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

Under Federal Rule of Civil Procedure 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 322. When the moving party has met its Rule 56(c) burden, "[t]he non-movant cannot avoid summary judgment . . . by merely making 'conclusory allegations' or 'unsubstantiated assertions.'" *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (quoting *Little*, 37 F.3d at 1075). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). All reasonable inferences

4

are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

## IV. ANALYSIS

The substantive law applicable to this case is the law of Louisiana. Courts applying Louisiana law resolve negligence cases by engaging in a duty-risk analysis. *Perkins v. Entergy Corp.*, 2000-1372, p. 7–8 (La. 3/23/01); 782 So. 2d 606, 611. The determination of liability under this analysis requires proof of five elements: (1) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant had a duty to conform his conduct to a specific standard; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the plaintiff suffered actual damages. *Id.* (citing *Boykin v. Louisiana Transit Co., Inc.*, 96–1932, pp. 8–9 (La.3/4/98), 707 So. 2d 1225, 1230). "If the plaintiff fails to prove any one element by a preponderance of the evidence, the defendant is not liable." *Id.* (citing *Mathieu v. Imperial Toy Corp.*, 94–0952, p. 11 (La.11/30/94), 646 So. 2d 318, 326).

Shell contends it is entitled to summary judgment on the causation element, arguing "Plaintiffs have no evidence showing that they were exposed to a dangerous level of radiation from NORM in pipe belonging to any particular Shell defendant." R. Doc. 547-1 at 6. "Because Louisiana law has never permitted market-share liability to supplant proof of causation, Plaintiffs cannot simply lump all of the Tuboscope customers together and assert that they all substantially caused Plaintiffs' alleged injuries." *Id.* at 8. Thus, Shell contends, without "medical evidence upon which to base a liability finding against any Shell Defendant," "the jury will be asked to

5

speculate in the total absence of evidence showing Shell-specific radiation exposure." *Id.* at 9.

In support of this argument, Shell points to the fact that Plaintiffs' experts did not render an opinion specifically attributing a particular dose of NORM dust exposure to any Tuboscope yard customer. On January 8, 2019, Plaintiffs' dose reconstruction experts, Dr. Phillip Plato, Ph.D., and Dr. Joseph Miklos, Ph.D., submitted a report offering their opinion on the Plaintiffs' NORM exposure. R. Doc. 547-4. In their report, the doctors explain, "the methodology [they] used to reconstruct the radiation doses for 8 Plaintiffs who were involved with pipe cleaning at Tuboscope" thusly:

> They worked at Tuboscope between 1962 and 1998. . . . Most of the Plaintiffs had more than one job title and worked at more than one location within Tuboscope during their employment with that company. When that situation was apparent, we made a reasonable attempt to reconstruct[] separate doses for each work location, and then we combined the doses for all the work locations to report a single dose for the plaintiff.

*Id.* at 1. Ultimately, Drs. Plato and Miklos offer an opinion on Plaintiffs' lifetime exposure to NORM, concluding "[t]he 8 Plaintiffs accumulated these lifetime doses averaged over the years they worked at Tuboscope."

Shell also submits Plaintiffs' medical causation experts, Dr. James Ellis, M.D. and Dr. Patricia Williams, Ph.D., relied on Drs. Plato and Miklos' dose reconstruction calculation in rendering their opinions. In his report, Dr. Ellis concludes:

> The Plaintiffs have *lifetime exposure* to radiation with organ dose reconstruction as discussed within of sufficient levels to cause adverse health effects as reported in the scientific literature as a consequence of the execution of their workplace duties at Tuboscope.

R. Doc. 547-3 (emphasis added). Similarly, Dr. Williams contends "[Plaintiffs] have extensive radium body burdens and *lifetime doses* of radium as a result of direct contact and completed exposure pathways with radioactive materials on-site at Tuboscope." R. Doc. 547-2 at 169

6

(emphasis added). Thus, Shell argues, like Drs. Plato and Miklos's report, "Neither of the reports from Drs. Ellis or Williams contain any causation opinions specific to Shell Oil Company, Shell Offshore Inc., or SWEPI LP."

In opposition, Plaintiffs argue they need not prove a specific dosage attributable to Shell because Shell is solidarity liable with any alleged third-party tortfeasors and therefore bears fifty to one hundred percent of the responsibility for Plaintiffs' injuries depending on the individual Plaintiffs' date of "significant exposure." In support of their argument that the pre-amendment version of Civil Code Article 2324 applies to this case, Plaintiffs point to *Aucoin v. State Department of Transportation and Development*, 97-1967 (La. 4/24/98), 712 So. 2d 62 (overturned on other grounds by statute) and *Cole v. Celotex Corp*, 599 So. 2d 1058 (La. 1992).

According to Plaintiffs, under the pre-amendment version of Civil Code Article 2324, a cause of action in a long-latency occupational disease case accrues "when pre-act exposures are 'significant and such exposures later result in the manifestation of damages.'" Thus, Plaintiffs contend, because each of the Tuboscope flight Plaintiffs had significant exposure during one or both of the time periods when Civil Code article 2324 permitted some degree of solidary liability, Shell is solidarily liable with all the other third-parties. Because Plaintiffs have offered testimony establishing that Shell's pipe was the primary source of Plaintiffs' NORM exposure, Plaintiffs submit there are substantial questions of material fact as to whether Shell's conduct was "a significant contributing cause" of Plaintiffs' injuries as would preclude summary judgment. R. Doc. 554 at 14–15.

If Shell may be held solidarily liable, then Plaintiffs must show Shell had "something to do" with Plaintiffs' injuries to defeat summary judgment. *See Forest v. State, Through La. Dept. of Transp. and Dev.*, 493 So. 2d 563, 569 (La. 1986) (finding the state liable *in solido* with

7

defendant motorist in fatal car accident case because "the State's failure to properly mark this barricade and warn approaching motorists ha[d] 'something to do with' the harm that was suffered by [the decedent] and his family") (quoting *Jones v. Robbins*, 289 So. 2d 104, 106 (La. 1974)); *see also Anderson v. New Orleans Pub. Serv., Inc.,* 583 So. 2d 829, 833 (La. 1991) (explaining that if a defendant has "any negligence" that was "a cause" of the injury, it is liable *in solido* with the other tortfeasors). Thus, determining whether Shell has borne its initial summary judgment burden requires the Court to first consider whether Shell may be held solidarily liable for Plaintiffs' injuries.

Relevant to the instant case, Louisiana Civil Code article 2324 was amended in 1987, with an effective date of September 1, 1987. Prior to the 1987 revision of article 2324, a victim was able to seek full recovery from any one of the joint tortfeasors who were left to seek their respective contribution and indemnity from each other. The 1987 amendment still provided for solidary liability among joint tortfeasors but capped the amount at fifty percent of the plaintiff's recoverable damages. Being a substantive change in the law, the 1987 amendments applied prospectively only. *Jones v. Gateway Realty, Inc.*, 550 So. 2d 388 (La. App. 3d Cir. 1989), *writs denied* 556 So. 2d 27; 556 So. 2d 30 (La. 1990); *Morrison v. J.A. Jones Construction Co., Inc.,* 537 So. 2d 360 (La. App. 4th Cir.1988); *Turner v. Massiah*, 656 So. 2d 636, 640 (La. 1995).

In 1996, Louisiana Civil Code article 2324 was again amended and resulted in the adoption of pure comparative fault. In *Aucoin*, the Louisiana Supreme Court considered whether article 2324(B) applied retroactively, stating:

> That shift from solidary liability to joint and several obligation altered the existing rule. Moreover, since the amendment resulted in changing the amount of damages recoverable, the change was clearly substantive. As such, the amendment can have only prospective application. Therefore, the applicable article 2324(B) was that which existed at the time of the accident.

712 So. 2d at 67 (citations omitted).

Moreover, in *Cole*, the Louisiana Supreme Court held that if the "substantial injury producing exposures giving rise to plaintiffs' claims occurred before" the effective date of an amendment in the law, then pre-amendment law applies, thereby adopting the "exposure theory" to establish when a cause of action accrues in long-latency occupational disease cases. 599 So. 2d at 1066.

In this case, Plaintiffs worked at the Tuboscope yard at various times between 1962 and 1998; thus between 1962 at 1987, the year of the first relevant amendment to article 2324, Shell may be liable for all of Plaintiffs' damages. R. Doc. 554 at 14. Between 1987 and 1996, Shell may be liable for fifty percent of Plaintiffs' injuries.

Under the pre-amendment standards, the method for determining cause-in-fact, which is generally used when multiple causes are present, is the "substantial factor" test. *See Roberts v. Benoit*, 605 So. 2d 1032, 1042 (La. 1991); *see also Quick v. Murphy Oil Co.*, 93–2267 (La. App. 4 Cir. 9/20/94), 643 So. 2d 1291. "Under this test, cause-in-fact is found to exist when the defendant's conduct was a 'substantial factor' in bringing about plaintiff's harm." *Id.*

> To determine cause-in-fact, courts will carefully scrutinize all the evidence, and those acts will be adjudged causes-in-fact when it is found that more probably than not they were necessary ingredients of the accident. Stated otherwise, an act will be deemed a cause-in-fact of an accident only when, viewed in the light of all the evidence, it is concluded that it is a substantial factor without which the accident would not have happened.

*Ganey v. Beatty*, 391 So. 2d 545 (La. App. 3rd Cir. 1980), *writ denied*, 396 So.2d 1325 (La. 1981). There can be more than one cause in fact of an injury as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature. *Davis v. State Farm Ins. Co.*, 558 So. 2d 636 (La. App. 1st Cir. 1990). "Whether the defendant's conduct was a substantial factor in bringing about the harm, and, thus, a cause-in-fact of the injuries, is a factual question

9

to be determined by the factfinder." *Perkins v. Entergy Corp.*, 2000-1372 (La. 3/23/01, 8–10), 782 So.2d 606, 612 (citing *Theriot v. Lasseigne*, 93–2661, p. 5 (La.7/5/94), 640 So.2d 1305, 1310 ("Cause-in-fact is a factual question to be determined by the factfinder.")).

Shell's argument that Plaintiffs are not able to prove an essential element of their claims is predicated on the idea that Plaintiffs are required to provide *expert* testimony stating the precise amount of NORM to which Plaintiffs were exposed that is attributable to Shell. Notably, Shell does not argue Plaintiffs have *no* evidence of their exposure attributable to Shell, rather, at oral argument, Shell emphasized that its motion pertained specifically to Plaintiffs' lack of *expert* testimony.

The Court finds Plaintiffs are not required to provide expert testimony attributing a specific amount of Plaintiffs' alleged NORM exposure to Shell to show Shell's conduct bears a "proximate relation" to Plaintiffs' harm and "is substantial in nature."[1] *See Davis*, 558 So. 2d at 636. As a result, the Court concludes Shell has failed to carry its burden on summary judgment. Even if Shell had borne its burden, thereby shifting the burden to Plaintiffs to show Shell's pipe was a significant cause of their injuries, Plaintiffs offer ample record evidence that Shell's actions or inactions were a significant cause of their injuries.

To demonstrate causation attributable to Shell, Plaintiffs first point to the deposition testimony of Lester Jackson, Shell's materials manager from 1974 to 2000. Jackson worked at Shell's terminal in Venice, Louisiana for all but three years, from 1974 to 1995. As a part of his

---

[1] At oral argument, counsel for Shell pointed to *Hill v. Exxon Mobil Corp.*, 988 F. Supp. 2d 691 (E.D. La. 2013) as standing for the proposition that Plaintiffs' may prove causation with expert testimony only. In *Hill*, however, the Court concluded the defendant's summary judgment motion was well taken not because the plaintiffs' experts were not able to say exactly *how much* NORM exposure was attributable to the defendants, but rather because "[t]he record is devoid of evidence that the pipes that Chevron and Shell sent to Tuboscope had radiation." *Id.* at 695. In this case, there is evidence demonstrating Shell's pipe contained NORM, that this pipe was sent to Tuboscope for cleaning during the time-period in which Plaintiffs worked at the yard, and that Plaintiffs primarily cleaned Shell pipe.

10

job duties, Jackson oversaw the movement of production pipe to and from Shell's production platforms in the Gulf of Mexico. During his deposition, Jackson was unable to identify how many Shell wells were in the Gulf, as they were so numerous. As Jackson testified:

> **Q**. How many wells generally were you working on or was Shell operating during that time period offshore?
> **A**. I couldn't answer that because there was a whole lot. Shell was booming back then.
> **Q**. Fifty? A hundred? Generally, do you know?
> **A**. I couldn't. I really couldn't say that because they had so many rigs going on. They had so many rigs offshore and not only that, they had lot of inland locations like East Bay and Block 69. All of these wells that had been producing for years, they were reconditioning them, and that's where the old pipe was coming out and coming back in. It was just a tremendous amount. I really couldn't say how many it was.
> **Q**. So generally how much pipe were you moving back and forth, like, on a daily basis in and out of there? Was it was a lot?
> **A**. Oh, man, it was truckloads. Truckloads of casing and tubing coming. We had loads of pipe coming in on barges and boats just all day long. It's coming constantly. Never stopped.

R. Doc. 554-3 at 12:18–13:16. Jackson further testified that "most of [Shell's] used pipe went to Tuboscope." *Id.* at 40:19–20. Plaintiffs also point to the testimony of Steve Gaudet, Shell's corporate representative, who testified that the primary contractor who "removed foreign material," meaning pipe scale, for Shell was Tuboscope. R. Doc. 554-4 at 125:17–128:7, 159:24–162:21.

Next, Plaintiffs point to the testimony of Greg Southworth, another of Shell's corporate representatives, who explained Shell's testing of pipe revealed that about half of its production contained a radioactivity level of above 2,000 picocuries per gram ("pCi/g"). R. Doc. 554-7 at 299:24–300:16. As Plaintiffs' and Shell's experts explain, at 2,000 pCi/g, NORM is considered so hazardous that it is subject to hazardous waste transportation regulations. R. Doc. 554-5 at 32–38; R. Doc. 554-7 at 299. Moreover, Plaintiffs' experts and Shell's health physics expert, John Frazier, agree that there is an overall NORM radioactivity concentration in scale.

In addition to expert testimony from both Plaintiffs' and Shell's experts, Plaintiffs point

11

to ten affidavits from the living Tuboscope Plaintiffs and from co-workers on behalf of the deceased Plaintiffs. These affidavits reveal that: (1) all Plaintiffs worked with Shell pipe, (2) all were exposed to scale dust released from the used pipes, (3) the primary customer at the Tuboscope yard was Shell, and (4) Shell's used pipe was the single greatest source of Plaintiffs' NORM exposure.

Finally, Plaintiffs point to Shell's work orders for services, including the cleaning of used pipe, that was done at the Tuboscope Harvey yard for the years 1988 to 1991. Shell contends it was unable to locate work orders for any other years relevant to the instant suit. The work orders Shell did produce, however, reveal that during that four-year period, over 50,000 joints of Shell's used pipe were cleaned at the Tuboscope yard. Plaintiffs also have records from Tuboscope, which demonstrate Tuboscope processed nearly 15,000 joints of Shell's used pipe over the course of thirty-five days, from February 28 to April 4, 1983. R. Doc. 554-10.

Based on the evidence offered by Plaintiffs, the Court concludes there are significant issues of material fact on the question of whether Shell's actions or inactions were a significant contributing cause of Plaintiffs' injuries. As a result, the Court will deny Shell's motion for summary judgment.

## V. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motion for summary judgment filed by Defendants Shell Oil Company, Shell Offshore Inc., and SWEPI LP, R. Doc. 547, be and hereby is **DENIED**.

New Orleans, Louisiana on this 21st day of February, 2019.

_____
Eldon E. Fallon
U.S. District Court Judge